(October 10, 1989)

■ SYLVIA H. ACKERBERG, Appellant, v ROBERT C. ACKERBERG, Respondent.—In an action for a divorce and ancillary relief, the plaintiff wife appeals from so much of a judgment of the Supreme Court, Nassau County (McCabe, J.), entered August 23, 1988, as, after a hearing, directed her to pay the defendant husband the net sum of $16,800 based upon the court's valuation of the parties' pensions pursuant to a stipulation between the parties dated September 16, 1987.

Ordered that the judgment is reversed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for (1) a hearing to determine the intention of the parties with regard to that portion of a stipulation of settlement dated September 16, 1987, as to the valuation of each party's pension, and (2) a de novo evaluation by the court of the value of the parties' pensions.

In this divorce action, the parties resolved their differences in a stipulation dated September 16, 1987. Among the provisions in the stipulation, the defendant husband agreed to transfer his title to the marital residence to the plaintiff wife in consideration of payment of the sum of $93,500. The parties further agreed that the wife "shall be credited with one-half of the difference between the value of the husband's pension * * * and the value of the wife's pension". The determination of the value of the respective pensions was set forth in a handwritten portion of the stipulation which provided as follows: "6. The parties agree that they shall attempt to resolve & agree as to the value of each [party's] pension within thirty (30) days of the date of this stipulation. In the

event they are unable to do so they will have this matter heard by the court subject to the court's approval".

It is noted that the stipulation made no reference to tax consequences. The parties could not agree on the value of the respective pensions, and in accordance with the provisions of the stipulation, the matter was presented for determination to the Supreme Court. On February 2, 1988, a hearing was held, during which the husband's attorney attempted to elicit testimony from his expert concerning the tax impact with regard to the husband's pension. The court sustained the wife's attorney's objection to testimony regarding tax consequences, apparently on the assumption that the issue as to whether tax consequences were to be considered was a legal issue dependent upon the terms of the stipulation.

The court's ruling precluded the admission of evidence as to tax consequences, and counsel for both parties could have reasonably concluded that tax consequences would not be considered in valuation of the pensions. Notwithstanding its ruling, in its memorandum decision dated June 3, 1988, the court considered the tax impact. The court, apparently relying on the general statutory provisions pertaining to equitable distribution, which provide for the consideration of tax consequences (Domestic Relations Law § 236 [B] [5] [d] [10]), evaluated the husband's pension at $270,000 and reduced that value by the "Tax Impact" in the sum of $108,000, arriving at a net value of $162,000. Although the record is barren of any testimony or documentary evidence submitted at the hearing with regard to the tax impact of the husband's pension, this court was advised at oral argument that the $108,000 figure allocated to the tax impact relating to the husband's pension was set forth in the husband's posthearing memorandum of law, which document is not part of the record on appeal.

The wife appealed from this determination alleging that (1) the parties' stipulation did not provide for the consideration of tax consequences, and (2) even if the court had the right to factor in the tax impact, her due process rights were violated in that she had no opportunity to either cross-examine or introduce evidence on this issue.

Our review of the pertinent portion of the stipulation reveals that it is unclear and ambiguous as to whether the parties intended the court to consider tax consequences in its evaluation. As such, extrinsic evidence is admissible to ascertain the intent of the parties in this regard (see, Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169, 172; Jennings Beach Assocs. v Kaiser, 145 AD2d 607; Federated Assocs. v Howard

*Johnson Co.,* 144 AD2d 531; *Kane Mfg. Corp. v Partridge,* 144 AD2d 340; *O'Neill v Town of Fishkill,* 134 AD2d 487; *cf., Namad v Salomon, Inc.,* 74 NY2d 751). Accordingly, a hearing is required as to the intention of the parties on the issue of whether the court may take tax consequences into consideration in determining the value of the respective pensions.

In the event the court determines that the parties intended to include tax consequences in the valuation, the court shall proceed with a de novo hearing on the tax impact as to each pension, and thereafter determine the value of the respective pensions. The court should take such evidence as it finds necessary to reach that objective. If the court concludes that the parties intended that their respective pensions be valued without regard to the tax consequences, the award must be recalculated accordingly. Mollen, P. J., Brown, Lawrence and Spatt, JJ., concur.